## ROBERT MOODY & SON *v.* CENTURY SAVINGS BANK.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 70.   Argued November 10, 11, 1915.—Decided December 13, 1915.

A petition filed by a trustee in bankruptcy in the bankruptcy proceeding, asserting title to lands of the bankrupt reciting encumbrances thereon and asking that they be sold, the assets marshaled, and all persons claiming liens be made parties, gives rise to a controversy in bankruptcy proceedings, the decision in which may be reviewed by the Circuit Court of Appeals under § 24a of the Bankruptcy Act and § 128, Judicial Code.

Although such a proceeding is commenced by the trustee, the appearance of holders of mortgage liens asserting their rights and seeking to have them enforced conformably to their contentions, is equivalent to affirmative intervention and brings a controversy quite apart from ordinary steps in bankruptcy.

Homestead rights in land are creations of the States in which the lands are situated, and the validity and operation of mortgages thereon are determined by the statutes of the State in which the homestead is situated, as construed and applied by the courts of that State.

Under the laws of Iowa, as construed by the courts of that State, a homestead, even when validly mortgaged, may be sold only for a deficiency remaining after exhausting all other property covered by the same mortgage.

The right to insist on the exemption of a homestead in Iowa from sale except for deficiency is not personal to the mortgagor, but may be asserted by anyone to whom the homestead owners may have transferred an interest; nor can they after such transfer prejudice the transferee in the exercise of this right.

204 Fed. Rep. 963.

THE facts, which involve the jurisdiction of this court of appeals from judgments of the Circuit Court of Appeals, in a bankruptcy proceeding and the marshaling of proceeds of sale of homestead property in Iowa, are stated in the opinion.

*Mr. S. F. Prouty,* with whom *Mr. George F. Haid* and *Mr. Newton P. Willis* were on the brief, for appellants.

*Mr. W. G. Harvison*, with whom *Mr. Horatio F. Dale* was on the brief, for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

The facts bearing upon the questions presented by this appeal are these: On his voluntary petition Oscar M. Hartzell, a resident of Madison County, Iowa, was adjudged a bankrupt. He owned 960 acres of land in that county, 40 acres of which he and his family had been and were occupying as a homestead. Three mortgages in terms covering all the land had been given by him—the first to Emma Johnson, the second to Moody & Son, and the third to the Century Savings Bank. His wife had joined in the first and third, but not in the second. After he was adjudged a bankrupt, he and his wife executed an instrument waiving and surrendering their right in the homestead and authorizing the trustees in bankruptcy to take possession and dispose of the same for the benefit of all the creditors. At a later date the trustees filed in the bankruptcy proceeding a petition asserting title to all the land, reciting the existence of the mortgages and other asserted liens, and praying that the 960 acres be sold free of all liens, that the proceeds be held by the trustees subject to the further order of the court, that all persons asserting liens on any part of the land be required to set them up by answer, that certain of the asserted liens be declared void and that as to the others the assets be marshaled. Acting upon this petition the court, with the assent of the parties in interest, directed that the land be sold as prayed, that all liens thereon be transferred to the proceeds and that the latter be held by the trustees for the payment of whatever liens or claims might be established against the same. The lands were sold, all liens found to be superior to the three mortgages were paid out of the proceeds and there remained a balance of $54,264.77,

which, although $13,683.94 in excess of what was required to pay the first mortgage, was insufficient to pay it and either of the others. Of this balance, $8,000 arose from the sale of the homestead. Moody & Son and the Century Savings Bank, both appearing in response to notice of the trustees' petition, asserted . conflicting rights under their respective mortgages to a part of the proceeds. Although conceding that the first mortgage—that to Johnson—should be fully paid, they differed widely respecting the disposition of the proceeds of the homestead, Moody & Son asserting a right to have the same applied on the first mortgage and to receive on their mortgage whatever remained of the proceeds of the other land, and the bank asserting a right to have the first mortgage satisfied from the proceeds of the other land and to receive on its mortgage the proceeds of the homestead. Under the first contention Moody & Son would receive $13,683.94 and the bank nothing, while under the other Moody & Son would receive $5,683.94 and the bank $8,000. The bankruptcy court rejected both contentions and held that the proceeds of the homestead and those of the other land should be proportionally applied in paying the first mortgage, that the balance then remaining from the sale of the homestead, being $2,947.22, should be paid on the bank's mortgage and that the balance from the sale of the other land, being $10,736.67, should be paid on Moody & Son's mortgage. A decree was entered accordingly and the bank appealed to the Circuit Court of Appeals, which after overruling a motion challenging its jurisdiction, sustained the bank's contention and reversed the decree with instructions which were equivalent (see *Chesapeake & Potomac Telephone Co.* v. *Manning,* 186 U. S. 238, 240; *Metropolitan Water Co.* v. *Kaw Valley Drainage District,* 223 U. S. 519, 523) to directing a decree giving full effect to that contention. 204 Fed. Rep. 963; 209 Fed. Rep. 775. Moody & Son then appealed to this court.

Whether the Circuit Court of Appeals rightly sustained its jurisdiction turns upon whether this is one of those "controversies arising in bankruptcy proceedings" over which the circuit courts of appeals are invested, by § 24a of the Bankruptcy Act, with the same appellate jurisdiction that they possess in other cases under the Judicial Code, § 128, or is a mere step in bankruptcy proceedings the appellate review of which is regulated by other provisions of the Bankruptcy Act. If it is a controversy arising in bankruptcy proceedings the jurisdiction of that court was properly invoked, as is also that of this court. We entertain no doubt that it is such a controversy. It has every attribute of a suit in equity for the marshaling of assets, the sale of the encumbered property and the application of the proceeds to the liens in the order and mode ultimately fixed by the decree. True it was begun by the trustees and not by an adverse claimant, but this is immaterial, for the mortgagees, who claimed adversely to the trustees, not only appeared in response to notice of the trustees' petition, but asserted their mortgage liens and sought to have them enforced against the proceeds of the property conformably to the contentions before stated. This was the equivalent of an affirmative intervention and, when taken in connection with the trustees' petition, brought into the bankruptcy proceedings a controversy which was quite apart from the ordinary steps in such proceedings and well within the letter and spirit of § 24a. *Hewit* v. *Berlin Machine Works*, 194 U. S. 296, 300; *Knapp* v. *Milwaukee Trust Co.*, 216 U. S. 545, 553; *Teft* v. *Munsuri*, 222 U. S. 114, 118; *Houghton* v. *Burden*, 228 U. S. 161, 165; *Globe Bank* v. *Martin*, 236 U. S. 288, 295.

Coming to the merits, the matter for decision is the proper application or disposition of the proceeds of the 40 acres which the bankrupt and his family occupied as a homestead when the mortgages were given and up to the time of the waiver before mentioned. The homestead

right in this land was a creation of the statutes of the State, and therefore to determine what bearing this right had upon the validity and operation of the mortgages we must turn to those statutes and the decisions of the Supreme Court of the State construing and applying them. The statutes are found in the Code of 1897, and are as follows:

"Sec. 2972. The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary.

"Sec. 2974. No conveyance or incumbrance of or contract to convey or incumber the homestead, if the owner is married, is valid, unless the husband and wife join in the execution of the same joint instrument, whether the homestead is exclusively the subject of the contract or not, but such contracts may be enforced as to real estate other than the homestead at the option of the purchaser or incumbrancer.

"Sec. 2976. The homestead may be sold on execution for debts contracted prior to its acquisition, but in such case it shall not be sold except to supply any deficiency remaining after exhausting the other property of the debtor liable to execution. It may also be sold for debts created by written contract, executed by the persons having the power to convey, and expressly stipulating that it is liable therefor, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.

"Sec. 2981. The owner may, from time to time, change the limits of the homestead by changing the metes and bounds, as well as the record of the plat and description, or vacate it, but such changes shall not prejudice conveyances or liens made or created previously thereto, and no such change of the entire homestead, made without the concurrence of the husband or wife, shall affect his or her

rights, or those of the children. The new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been."

Counsel are agreed that under these statutes the mortgages to Johnson and the bank, in which the wife joined, became valid liens on the homestead as well as on the other land; that the intervening mortgage to Moody & Son, in which the wife did not join, was void as to the homestead and became a valid lien only on the other land; that this mortgage remained void as to the homestead notwithstanding the subsequent waiver of the homestead right, and that its invalidity in that respect could be asserted by the bank as a subsequent mortgagee. We therefore come to the provision in § 2976 that the homestead, even where validly mortgaged, may be sold "only for a deficiency remaining after exhausting all other property" covered by the same mortgage. Whether only the mortgagors may claim the benefit of this provision, and they only while they retain the homestead, is the real point in dispute. Moody & Son insist that it merely confers on the mortgagors a personal privilege which they may exercise or waive as they choose, that in this instance the privilege was surrendered or terminated when the homestead right was waived and that in consequence the provision has no bearing on the proper application or disposition of the proceeds of either the homestead or the other land. The bank, on the other hand, insists that the right to have this provision followed is not strictly personal to the mortgagors but may be asserted by one to whom they transfer an interest in the homestead, such as a subsequent vendee or mortgagee, and that no act of theirs done after the transfer can prejudice the transferee in the exercise of this right. The solution of the question is not free from difficulty, but we are persuaded, as was the Circuit Court of Appeals, that in view of the decision of the Supreme

Court of the State in *Linscott* v. *Lamart*, 46 Iowa, 312, the bank's contention must be sustained.

The facts in that case, so far as now material, were these: One Ash owned 71 acres of land, 40 of which were his homestead. He and his wife mortgaged the entire tract to Lamart. Linscott subsequently obtained a judgment against Ash and purchased one-half of the tract at a sale under the judgment. Later Ash and his wife sold and conveyed the entire tract to Lamart, it being understood that this should not extinguish the mortgage. Lamart went into possession and Linscott brought a suit to determine the rights of the parties in the land. Lamart prevailed and the Supreme Court affirmed the decree, saying: "Ash and his wife had the right to sell and convey the homestead to Lamart, and he has the right to hold it exempt from judicial sale on plaintiff's judgment." And, after holding the sale under the judgment void because it included part of the homestead, the court further said: "What then are the rights of the parties? If Ash had not conveyed to Lamart, upon foreclosure of the mortgage, the homestead could only 'be sold to supply the deficiency remaining after exhausting the other property' included in the mortgage. Lamart paid Ash some $1,400 for the whole tract, being more than twice the amount of the mortgage. No fraud is charged or shown, and as he had the right to purchase the homestead and hold it as against plaintiff's judgment, he should now have the right to have the proceeds of the land, aside from the homestead, applied in payment of his mortgage, to the exclusion of junior liens. In other words, it would be inequitable to put him in a worse position than he would be if he had not taken the title from Ash. The plaintiff, by this rule, is left in precisely the same position he would now occupy if Ash were still holding his homestead, and Lamart his mortgage." Thus, under the influence of the provision in § 2976, it was ruled

that the mortgage, which embraced the homestead and other land, could be satisfied out of the latter to the exclusion of a junior judgment lien embracing the other land but not the homestead, and this although the mortgagors had sold the homestead and no longer had any right therein. This decision is more nearly in point than any other and we think it shows that the right to invoke the provision in § 2976 is neither strictly personal to the mortgagors nor wholly terminated by their waiver of the homestead right. Moody & Son place some reliance upon *Barker* v. *Rollins*, 30 Iowa, 412, and *Dilger* v. *Palmer*, 60 *Id.* 117, although conceding that the cases are not closely in point. We think they are without present bearing. In the former a purchaser of a mortgaged homestead, who thereafter made the land his homestead, claimed that this entitled him to have the mortgage satisfied from other unmortgaged property of the mortgagor, and the claim was denied, the court observing, 30 Iowa, p. 413: "*His* homestead was not within the contemplation of the parties to the contract sued on. The creditor might well be held to have contracted with reference to all the phases of homestead claimed by his debtor; but not as to any such claim by third parties, who should voluntarily purchase the property with full knowledge of the incumbrance upon it. They cannot intrude their rights upon the property to the prejudice of the creditor." In the other case a homestead was mortgaged with other land and the mortgagors thereafter sold the latter to a third person but retained the former. When it was sought to foreclose the mortgage, the mortgagors claimed that § 2976 entitled them to have the mortgage satisfied from the non-homestead property, which they had sold, and the claim was rejected, the court holding that by their sale of the non-homestead land they were estopped from insisting that it constituted the primary fund for the payment of the mortgage.

Concluding, as we do, that the Circuit Court of Appeals rightly applied the local statutes as construed by the Supreme Court of the State, its decree is

*Affirmed.*